## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 0 2 2002

Michael N. Milby
Clerk of Court

CESAR LUCIO,               )
                          )
v.                        )     C.A.  **B-02-225**
                          )
CHARLES ARENDALE,         )
  ACTING DIRECTOR, HLG/DO and  )
                          )
JOHN ASHCROFT, ATTORNEY   )
  GENERAL OF THE UNITED STATES. )
_____ )

### PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Cesar Lucio, (hereinafter, "Mr. Lucio"), through the undersigned, files the instant Petition For Habeas Corpus, under 28 U.S.C. §2241, and *INS v. St. Cyr,* 121 S.Ct. 2271 (2001), challenging the Decision of the BIA dated October 24, 2002. (Petitioner's Exhibit A, incorporated by reference).

### I.   JURISDICTION AND VENUE

1. Petitioner Cesar Lucio is under an administratively final order of removal, which places significant restrictions on his liberty not shared by the populace at large, and constitutes custody within the meaning of *Jones v. Cunningham,* 371 U.S. 236,240 (1963).


2. Respondent Arendale maintains his offices, and Petitioner's removal proceedings were conducted, in Harlingen, Texas, within the jurisdiction of this Court.

### II.   THE PARTIES

3. Cesar Lucio is a lawful permanent resident, ("LPR"), who has resided continuously in the United States since 1980. He became a lawful temporary resident on September 3, 1987, and an LPR on March 12, 1990. He resides in Rio Hondo, Texas.

4.  Respondent Charles Arendale is the Acting Director HLG/DRO of the Harlingen, Texas, office of Immigration and Naturalization Service.  He is sued in his official capacity only.

5.  Respondent John Ashcroft is the Attorney General of the United States.  He is also sued in his official capacity only.

### III.  THE FACTS

6.  On or about October 16, 1999, Mr. Lucio was charged with (simple) possession of marijuana.  He pled guilty to the offense on January 3, 2000, and was fined, and placed on ten years probation.

7.  A Notice to Appear, ("NTA"), was issued January 3, 2000.  It asserted removability under 8 U.S.C. §1227(a)(2)(B)(i), for having been convicted of an offense relating to a controlled substance. Mr. Lucio conceded removability, and sought relief in the form of cancellation of removal, under 8 U.S.C. §1229b(a).

8.  On March 7, 2000, an Immigration Judge at Los Fresnos, Texas, found that Mr. Lucio had not been convicted of an aggravated felony, that he was statutorily eligible for cancellation of removal, and denied relief in the exercise of discretion, largely on the grounds that Mr. Lucio's wife had not yet achieved LPR status, and that the hardship to her was therefore not to be considered. (Petitioner's Exhibit B, herein incorporated by reference). Mr. Lucio filed a timely appeal to the BIA.

9.  A few weeks later, Mr. Lucio's wife became a lawful permanent resident, and his prior counsel advised the Board of that fact in conjunction with his brief on appeal.

10. The appeal remained pending at the BIA until October 24, 2002, when a single Member of the BIA affirmed, without opinion, the "results of the decision below," which therefore became "the final

agency determination." Exhibit A.   Mr. Lucio recently filed a motion to reconsider, and remand, with the BIA.

### IV.  ERRORS OF LAW AND EGREGIOUS ABUSE OF DISCRETION

Since the Decision of the Immigration Judge is "the final agency determination," Mr. Lucio's statutory eligibility for relief is law of the case, regardless of any subsequent changes in the law.

Assuming, therefore, that the Board Member who summarily affirmed the Judge's Decision herein concluded, *sub silentio,* that the Judge had properly exercised his discretion, said finding rested on an error of law, to wit, that the hardship to Mr. Lucio's wife did not count because she was not yet a lawful permanent resident.  It also constituted a "manifest" abuse of discretion.  *See, Kwock Jan Fat v. White*, 253 U.S. 454, 457-458 (1920), wherein the Supreme Court granted certiorai, and remanded for a hearing on the merits of a habeas corpus petition contesting an *exclusion* order.  *Id.,* (internal citations omitted) (emphasis added):

> It is fully settled that the decision by the Secretary of Labor, of such a question as we have here, is final, and conclusive upon the courts, unless it be shown that the proceedings were 'manifestly unfair,' were 'such as to prevent a fair investigation,' **or show 'manifest abuse' of the discretion committed to the executive officers by the statute,... or that 'their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law,'** .... The decision must be after a hearing in good faith, however summary, ... and it must find adequate support in the evidence, ...

In addition to the arguments set forth in Petitioner's brief on appeal, [1] Mr. Lucio urges that it constituted an egregious abuse of

-----

[1]  These include the following:  1)  The fact that the Judge concluded that Mr. Lucio's wife would "not be considered an equity"

3

discretion not to consider the hardship to Mr. Lucio's wife, and that a favorable exercise of discretion was mandated by *Matter of Arreguin,* 21 I&N Dec. 38 (BIA 1995).

A comparison of the equities herein to those present in *Arreguin,* shows that Mr. Lucio presented an even more compelling case for relief than Ms. Arreguin.  Like Ms. Arreguin, Mr. Lucio was still detained at the time of his hearing, [2] and was therefore unable to make more than a limited showing of rehabilitation.  However, his offense was significantly less severe, as Ms. Arreguin had almost forty pounds more marijuana than Mr. Lucio, and was attempting to smuggle it into the United States.  Ms. Arreguin also had a prior arrest for smuggling undocumented aliens, and although the record did not demonstrate that she had been convicted of that offense,

---

in these proceedings, (IJ:7), and that the hardship to her "is not a relevant hardship," (IJ:10).  She had employment authorization, and was at the time still in the final stages of obtaining lawful permanent residence, which status she received a few weeks later; 2)  The Judge's finding that Mr. Lucio had not "achieved any degree of rehabilitation," (IJ:8), notwithstanding the Judge's finding that he had testified truthfully with respect to his involvement in the offense, thereby showing acceptance of responsibility, a crucial step along the path to full rehabilitation;
3)  The Judge drew an unwarranted inference when he concluded that the fact that Mr. Lucio had been convicted of DWI twice, (many years ago), and had still committed the marijuana offense at issue, demonstrated that Mr. Lucio's testimony that he had learned his lesson and would not commit a crime in the future was "not at all persuasive," (IJ:9); and
4)  The manner in which the Judge discounted the hardship to Mr. Lucio's three United States citizen children, (who were then ages 8, 10, and 11).  Even though Mr. Lucio's deportation would mean that they would move to Mexico with their parents, the Judge concluded that they would "prosper in that country," (IJ:11), without considering the lower economic standards they would suffer, and the reduced educational opportunities available to them.

    [2]  Note that the Oral Decision was issued at Los Fresnos, Texas, (IJ:1), which is the INS detention center, rather than in Harlingen, Texas, where non-detained cases are heard.

4

this brush with the law should have served equally well to place her on notice of the possible consequences of illegal conduct as Mr. Lucio's two DWIs, committed many years previously.

All other pertinent factors mitigate in Mr. Lucio's favor. Unlike Ms. Arreguin, he has a strong employment history; owns property in the United States, has never received public assistance, maintains an intact family unit, and his deportation would necessarily have caused his children to be uprooted from their native country, [3] whereas Ms. Arreguin's children were living with her sister in any event. In total, there is no significant difference between the two cases, and the fact that the Judge did not even mention this case, the most nearly applicable "yardstick" by which to measure Mr. Lucio's equities and negative factors, in determining whether a favorable exercise of discretion was warranted, is in and of itself, an egregious abuse of discretion. [4]

### V.  INCHOATE ERROR OF LAW

Insofar as the Board summarily affirmed the Decision of the Immigration Judge, citing 8 C.F.R. §3.1(a)(7), it is impossible to ascertain the exact reasoning of the Board. However, there was a change in the interpretation of the law affecting Mr. Lucio's eligibility for such relief between the time of the Immigration

---

[3] As discussed *infra*, this is no longer the case, since Mr. Lucio's wife became an LPR shortly after his hearing, and might well decide now to remain in the U.S. with their children.

[4] *Matter of C-V-T-*, 22 I&N Dec. 7 (BIA 1998), is factually very different, as it involved a Vietnamese national who had lost all contact with his family in Vietnam. The only other reported decision in which §212(c) relief was granted was *Matter of Sosa-Hernanez*, 20 I&N Dec. 758 (BIA 1993). That case also involved a very serious drug offense, as well as the fact that the Petitioner had obtained his LPR status by fraud, and required waivers both under §212(c) and §241(f) of the Act. Nonetheless, discretion was favorably exercised, and was not contested by INS.

5

Judge's decision, and the BIA's summary affirmance thereof. *See,*
*U.S. v. Hernandez-Avalos,* 251 F.3d 505 (5th Cir. 2001) (holding
that a state felony conviction for simple possession of a
controlled substance is an aggravated felony for purposes of the
Sentencing Guidelines, and expressing, in *dicta,* strong opposition
to the Board's decision in *Matter of K-V-D-,* 22 I&N Dec. 1163 (BIA
1999)). Assuming, *arguendo,* that this change underlay the BIA's
summary affirmance of the denial of Mr. Lucio's application for
cancellation of removal, this was also error. [5]

As seen from subsequent amendments to the U.S. Sentencing
Guidelines, the Fifth Circuit erred in its interpretation of 18
U.S.C. §924(c) [6] in *U.S. v. Hernandez-Avalos,* and that said case is
no longer viable either in the immigration, or Sentencing
Guideline, context. The definition of "aggravated felony"
applicable herein is 8 U.S.C. §1101(a)(43)(B), which incorporates
the following offenses (emphasis added):

> **(B)   illicit trafficking in a controlled substance** (as
> defined in section 102 of the Controlled Substances Act [21
> U.S.C. §802]), including a drug trafficking crime (as defined
> in section 924(c) of title 18, United States Code).

Note that the basis of this definition is "illicit trafficking in
a controlled substance." The assertion that a simple possession
offense can be a drug "trafficking" crime is not only
counterintuitive, but is contradicted by previous BIA precedent.
Indeed, the BIA once observed that "[t]he offense of simple
possession would appear to be one example of a drug-related offense
not amounting to the common definition of 'illicit trafficking.'"

---

[5] *See,* 8 C.F.R. §3.1(a)(7)(ii) (permitting summary affirmance
where the issue is "squarely controlled by existing Board or
federal court precedent").

[6] As applied through 8 U.S.C. §1101(a)(43)(B)

*Matter of Davis*, 20 I&N Dec. 536,541 (BIA 1990). [7]

Clearly, the plain language, as well as the obvious intent, of §1101(a)(43)(B) was to cover offenses containing an element related to **trafficking** in drugs, not simple possession. [8] In *Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995), and again in *Matter of K-V-D-*, 22 I&N Dec. 1163 (BIA 1999), the BIA gave effect to the plain meaning, and furthered the important policy of national uniformity of the immigration laws, by construing §1101(a)(43)(B) as limited to offenses which would be felonies under federal law. This had the effect of excluding simple possession offenses of all controlled substances except crack cocaine, the possession of any amount of which is a felony under federal law.

In *Hernandez-Avalos, supra,* **a Sentencing Guidelines case,** the Fifth Circuit disapproved of *K-V-D-.* in strong *dicta*, opining that the language in §1101(a)(43) (B) "including a drug trafficking crime (as defined in section 924(c) of title 18..." was meant to cover all offenses which were felonies under state law, regardless of how they would be treated under federal law. However, effective November 1, 2001, some six months after *Hernandez-Avalos,* the Guidelines were amended, to give effect to the plain meaning of the language, by making it explicit that a "drug trafficking crime" had to include a trafficking component. U.S.S.G. §2L1.2(b)(1)(C,D),

---

[7]    Characterizing such an offense as a "drug trafficking offense" is reminiscent of an anecdote attributed to Abraham Lincoln. Lincoln asked a young lawyer, "How many legs does a cow have, if we call the tail a leg?" The young lawyer replied that, under those conditions, the cow would have five legs. "Four," disagreed Lincoln. "Calling a tail a leg doesn't make it one." With apologies to President Lincoln, calling simple possession a "drug trafficking crime" doesn't make it one.

[8]    *See, Gerbier v. Holmes*, 280 F.3d 297 (3rd Cir. 2002).

comment. (n.2), 18 U.S.C.A. [9]

A few weeks later, this new provision was interpreted by Senior Judge Justice, in *U.S. v. Sanchez,* 179 F.Supp.2d 689 (W.D.Tx 2001). In that case, Judge Justice applied the rule of lenity, [10] and concluded that offenses involving simple possession of a controlled substance were not "aggravated felonies" within the meaning of the amended Sentencing Guidelines. Although Judge Justice paid lip service to the *dicta* of *Hernandez-Avalos* that the offense might still be an "aggravated felony" under the immigration laws, it is urged that this interpretation can no longer stand.

The essential premise of the pertinent *dicta* in *Hernandez-Avalos* is that an offense which is considered to be an "aggravated felony" for the purposes of the Sentencing Guidelines should also be an "aggravated felony" for immigration purposes. If so, the converse should also hold. 18 U.S.C. §924(c) relates to the possession and use of firearms during the commission of "drug trafficking" offenses, and crimes of violence. In that context, it may make sense to include simple possession of drugs, since someone who, for example, brandishes a weapon at a police officer who is trying to

---

[9]   The definition as adopted on November 1, 2001, reads, in relevant part, as follows, at §2L1.2, comment. (n.1(B)(iii)):

> "Drug trafficking offense" means an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance ... or the possession of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense.

[10]   Because of the harshness of deportation, particularly in the context of lawful permanent residents, the rule of lenity also applies to the construction of deportation statutes. *See, e.g., INS v. Cardozo-Fonseca,* 94 L.Ed2d 434,459 (1987) (reaffirming "the long-standing principle of construing any lingering ambiguities in deportation statutes in favor of the alien.").

arrest him or her for "simple possession" should be treated in a like manner as someone who did the same during the sale of a small quantity of drugs to an undercover agent. However, the Sentencing Commission exercised a degree of "Lincolnian" common sense with respect to the importation of this definition into the immigration context, and specifically excluded "simple possession" offenses, (which offenses, virtually by definition, are *not* committed with the aid of a firearm), from the definition of "drug trafficking" crimes for purposes of 8 U.S.C. §1326.

As Judge Justice reasoned, continuing to call such offenses "aggravated felonies," because of the literal wording of §101(a)(43), would result in an "absurd" and therefore, untenable, result; 179 F.Supp.2d at 691:

> Such a result may seem rational under a strict, methodical interpretation of the guidelines. But this analysis reveals an inherent inconsistency. It is a accepted rule of statutory construction that "identical words used in different parts of the same act are intended to have the same meaning." *C.I.R. v. Keystone Consol. Industries, Inc.*, 508 U.S. 152, 113 S.Ct. 2006, 2011, 124 L.Ed.2d 71 (1993). This principle should apply even more strongly when identical terms are incorporated by reference into a single subsection of a sentencing guideline.
>
> The new guidelines explicitly define "drug trafficking offense" to *exclude* convictions for simple possession, felonies or not. *See* U.S.S.G. § 2L1.2, comment. (n.1(B)(iii)). However, the new guidelines' definition of "aggravated felony" incorporates a definition of "drug trafficking offense" that *includes* felony convictions for simple possession. If the government's reasoning were adopted, then "drug trafficking offense" would mean one thing for the 12-level enhancement and another thing entirely for the 8-level enhancement. Put more starkly, to properly sentence a defendant such as this one for illegal re-entry, a court would have to find that the defendant's prior conviction both *is and is not* a drug

trafficking offense.  It borders on the irrational to assume that the Sentencing Commission--much less Congress--would intend such an outcome.  *See Rowland v. California Men's Colony,* 506 U.S. 194, 113 S.Ct. 716, 720 & n. 3, 121 L.Ed.2d 656 (1993) (citing the "common mandate of statutory construction to avoid absurd results").

Consequently, the new definition should be applied equally in the immigration, and Sentencing Guidelines, contexts.  The injustice of a contrary interpretation is apparent not only in cases such as the one at bar, where an LPR accepted a plea bargain at a time when this disposition did not bar his eligibility for cancellation of removal, but also in instances where an LPR is convicted of simple possession of small amounts of cocaine.  In Texas, simple possession of any "visible and measurable" amount of cocaine, no matter how trivial, is a felony. Texas Health & Safety Code §§481.102(3)(D) and 481.115(d). *See also, Kemp v. State*, 861 SW2d 44 (App. 14 Dist. 1993) ("specks" of white powder in baggie, weighing .5 milligrams, sufficient to sustain a conviction).

Therefore, if the *dicta* in *Hernandez-Avalos* were to be given effect, LPRs such as Mr. Lucio would be considered to be ineligible for any form of relief from deportation, no matter their equities, because their offenses are "aggravated felonies." But if they returned unlawfully after deportation, the same offenses would not be considered to be "aggravated felonies" for purposes of sentencing them for unlawful re-entry, under 8 U.S.C. §1326.  This is precisely the kind of "absurd result" which the law eschews.

It also raises serious constitutional issues, under the Equal Protection clause; [11]   and as a violation of Mr. Lucio's

---

[11]    In the Ninth Circuit, deferred adjudication is not considered to be a conviction, and such persons would not even be subject to removal. *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000).  In both the Second and Third Circuits, a conviction for

constitutional right to Procedural Due Process, [12] and Substantive
Due Process, [13] as an overbroad statute which interferes with
protected family interests, by means of a "conclusive presumption"

---

simple possession of a controlled substance is not considered to be
an aggravated felony. *See*, *Aguirre v. INS*, 79 F.3d 315 (2d
Cir.1996); *U.S. v. Pornes-Garcia*, 171 F.3d 142 (2nd Cir. 1999), and
*Gerbier v. Holmes*, 280 F.3d 297 (3rd Cir. 2002).

[12] Although deportation is a civil, rather than criminal
penalty, even in the context of civil cases, there are certain
protections against the retroactive application of unexpected
punishment. *See, e.g.*, *BMW v. Gore*, 517 U.S. 559,574 (1996):

> Elementary notions of fairness enshrined in this Court's
> constitutional jurisprudence dictate that a person
> receive fair notice not only of the conduct that will
> subject him to punishment but also of the severity of the
> penalty that a State may impose.

[13] *See, e.g.*, *Zadvydas v. Davis*, 121 S.Ct. 2491 (2001), and
cases such as *Hoang v. Comfort*, 282 F.3d 1247 (10th Cir. 2002); *Kim
v. Ziglar*, 276 F.3d 523 (9th Cir. 2002), and *Patel v. Zemski*, 275
F.3d 299 (3rd Cir. 2001), applying retroactivity and Substantive Due
Process principles in other contexts relating to immigrants. *See*,
Dissenting Opinion of Board Member Rosenberg, *Matter of Salazar-
Regino*, 23 I&N Dec. 223,238 (BIA 2002). *See also, Landon v.
Plasencia*, 459 U.S. 21,34 (1982), citing *Bridges v. Wixon*, 326 U.S.
326 U.S. 135,154 (1945); *Moore v. City of East Cleveland*, 431 U.S.
494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty
> one. She stands to lose the right "to stay and live and
> work in this land of freedom," ... Further, she may lose
> the right to rejoin her immediate family, a right that
> ranks high among the interests of the individual. ...

*Moore* and *Stanley* are fundamental rights cases, involving family
relationships. *Stanley* struck down a conclusive presumption,
similar to that involved herein, and *Moore* simply concluded that
the interest advanced by the State was insufficient to justify the
particular intrusion into the family unit. As an LPR, Mr. Lucio
enjoys the same substantive Due Process rights, to develop and
enjoy intimate family relationships in the United States.

that no non-citizen, regardless of his family ties, and the minimal nature of his offense, is worthy of remaining in the U.S..

As reiterated in *INS v. St. Cyr, INS v. St. Cyr,* 121 S.Ct. 2271 (2001), and *Zadvydas v. Davis, supra,* such serious constitutional doubts mitigate in favor of finding a statutory interpretation which would avoid reaching the constitutional concerns, even if one is required to "stretch" the statutory language in order to do so. Here, however, such a statutory interpretation is clear, as is the means of distinguishing *Hernandez-Avalos, supra.* As held by the BIA as early as 1990, [14] and as more recently demonstrated by the amendments to U.S.S.G. §2L1.2(b)(1)(C,D), comment. (n.2), simple possession of a controlled substance is **not** a drug trafficking crime, either for purposes of 18 U.S.C. §924(c), or therefore, under 8 U.S.C. §1101(a)(43)(B).

**WHEREFORE**, it is urged that the Decision of the Immigration Judge, "the final agency determination," be vacated, on the grounds that it rests on an error of law, and an egregious abuse of discretion, to wit, that the hardship to Mr. Lucio's wife was not to be considered in adjudicating his application for relief.

In the alternative, it is urged that the Decision of the BIA herein be vacated, in that it rests on an error of law, in light of the amendments to the U.S. Sentencing Guidelines which occurred after the issuance of *U.S. v. Hernandez-Avalos, supra. See also,* the decision of Judge Justice in *U.S. v. Sanchez, supra.*

In either event, it is urged that the case be remanded to the BIA for reconsideration, and for a new decision on the merits,

---

[14] *Matter of Davis, supra.*

12

including a discussion of whether the Immigration Judge erred as a matter of law in refusing to consider the hardship to Mr. Lucio's wife, and whether Mr. Lucio should have been granted relief under *Matter of Arreguin, supra.*

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226
Fed. ID.  1178
Texas Bar 03052800

## VERIFICATION

I, Lisa S. Brodyaga, certify that I am familiar with the facts as stated above, and that they are true and correct to the best of my knowledge and belief.



## CERTIFICATE OF SERVICE

I hereby certify that a courtesy copy of the foregoing was personally served on the Office of Lisa Putnam, SAUSA, 1709 Zoy St., Harlingen, Texas, on December 2, 2002.

13

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


CESAR LUCIO,                        )
                                    )
v.                                  )        C.A.   B-02-225
                                    )
CHARLES ARENDALE,                   )
   ACTING DIRECTOR, HLG/DO and      )
                                    )
JOHN ASHCROFT, ATTORNEY             )
   GENERAL OF THE UNITED STATES.    )
_____)


EXHIBIT "A" IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

Goodwin, Jodi, Esq.
1322 East Tyler Avenue
Harlingen, TX 78550-7142

Office of the District Counsel/PI
P.O. Box 1711
Harlingen, TX 78551

Name: LUCIO, CESAR                    A90-453-823

**Date of this notice: 10/24/2002**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Jeffrey Fratter
Chief Clerk

Enclosure

Panel Members:
    HOLMES, DAVID B.

**RECEIVED**

OCT 29 2002

LAW OFFICE OF
JODI GOODWIN

**U.S. Department of Justice**
**Executive Office for Immigration Review**

**Decision of the Board of Immigration Appeals**

**Falls Church, Virginia 22041**

File:    A90-453-823 – Harlingen

Date: **OCT 2 4 2002**

In re:  LUCIO, CESAR

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Goodwin, Jodi, Esq.

ON BEHALF OF SERVICE:  Cheri L. Jones, Assistant District Counsel

ORDER:

PER CURIAM. The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 3.1(e)(4).

_____
FOR THE BOARD

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

CESAR LUCIO,                              )
                                         )
v.                                       )      C.A.  B-02-225
                                         )
CHARLES ARENDALE,                        )
   ACTING DIRECTOR, HLG/DO and           )
                                         )
JOHN ASHCROFT, ATTORNEY                  )
   GENERAL OF THE UNITED STATES.         )
_____ )


### EXHIBIT "B" IN SUPPORT OF
### PETITION FOR WRIT OF HABEAS CORPUS

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
Los Fresnos, Texas

File No.:   A 90 453 823                      March 7, 2000

In the Matter of                 )
                                 )
CESAR LUCIO,                     )        IN REMOVAL PROCEEDINGS
                                 )
          Respondent             )

CHARGE:        Section 237(a)(2)(B)(i) Immigration and
               Nationality Act

APPLICATIONS:  Cancellation of removal, Section 240A(a)
               Immigration and Nationality Act; voluntary
               departure, Section 240B, Immigration and
               Nationality Act

ON BEHALF OF RESPONDENT:        ON BEHALF OF SERVICE:
Jodi Goodwin, Esquire           Thomas M. Bernstein, Esquire
                                Assistant District Counsel

## ORAL DECISION OF THE IMMIGRATION JUDGE

### Statement of the Case

          The Immigration Service issued a Notice to Appear with
respect to respondent on January 3, 2000 and properly served it
upon him (Exhibit No. 1).  The Notice to Appear alleges that
respondent is not a citizen or national of the United States and
that he is a native and citizen of Mexico who was admitted to the

mlw

United States at Brownsville, Texas, on or about September 3,
1987 as an immigrant.  It is further alleged that on January 3,
2000 respondent was convicted in the 105th Judicial District
Court of Texas at Kingsville, Texas for the offense of possession
of marijuana, felony of the second degree, in violation of the
Texas Controlled Substances Act.  The Notice to Appear charges
that respondent is subject to removal from the United States
under Section 237(a)(2)(B)(i) of the Immigration and Nationality
Act (the Act).  Respondent through his attorney of record has
admitted all four allegations of fact in the Notice to Appear and
has conceded removability as charged.  Based upon the pleadings,
the Court finds that there is clear and convincing evidence the
respondent is subject to removal as charged in the Notice to
Appear.

Respondent selected Mexico as the country for removal
if that were to become necessary.  Respondent has applied to this
Court for cancellation of removal under Section 240A(a) of the
Act and in the alternative voluntary departure under Section 240B
of the Act.  Respondent has filed this application for
cancellation of removal as well as supporting documents which
have been admitted into the record and considered by the Court
(group Exhibit No. 2 and group Exhibit No. 3).  The hearings with
respect to respondent's applications for relief from removal were
held on February 29, 2000 and March 7, 2000.

Statement of the Facts and Conclusions of Law

A 90 453 823                    2                    March 7, 2000

mlw

In order to be eligible for cancellation of removal under Section 240A(a) of the Act, respondent must show that he has been an alien lawfully admitted for permanent residence for not less than five years, that he has resided in the United States continuously for seven years after having been admitted in any status, and that he has not been convicted of any aggravated felony.  If respondent establishes those statutory requirements, he must still demonstrate that cancellation of removal should be granted in the exercise of the Court's discretion.  With respect to the discretionary considerations, the Board of Immigration Appeals in <u>Matter of C-V-T-</u>, Int. Dec. 3342 (BIA 1998) set forth certain discretionary factors that the Court should consider in making its decision relating to an application for cancellation of removal under Section 240A(a) of the Act.  The Court of course can consider other discretionary factors that are relevant.  The Court has carefully considered the Board of Immigration Appeals decision in <u>Matter of C-V-T-</u> and has applied the standard as set forth in that case to the present case.

In this removal proceeding the respondent testified in support of his applications for relief from removal.  He also presented the testimony of his wife, Melva Lucio, as well as the testimony of his sister, Maria de Jesus Lucio.  Further, there was testimony proffered from many other witnesses.  Immigration Service accepted the offer of proof and waived the cross-examination of those witnesses.  The Court concludes that the

A 90 453 823                    3                    March 7, 2000

mlw

respondent and the other witnesses who testified on his behalf
were credible witnesses.  Testimony of the witnesses including
the respondent was internally consistent, specific, and
essentially consistent with the testimony of the other witnesses.

The Court concludes the respondent is eligible to be
considered for a discretionary grant of cancellation of removal
under Section 240A(a) of the Act.  The parties stipulated that
respondent was granted temporary legal resident status in the
United States on September 3, 1987 and that he was granted
permanent legal resident status in the United States on March 12,
1990.  Therefore, the respondent has been an alien lawfully
admitted for permanent residence in the United States for more
than five years.  Further, the record shows that since he came to
the United States to live in 1980 he has not lived in any other
country.  Respondent has resided in the United States
continuously for more than seven years after having been admitted
in any status.  Thus, respondent that was admitted as a temporary
legal resident on September 3, 1987 pursuant to Section
240A(d)(1) of the Act his continuous residence for purposes of
Section 240A(a) of the Act terminated when respondent committed
his possession of marijuana offense on October 16th of 1999.
Respondent already completed seven years of continuous residence
in the United States prior to that date and subsequent to his
admission as a temporary legal resident.  Further, respondent has
not been convicted of any aggravated felony in the meaning of

A 90 453 823                        4                     March 7, 2000

mlw

Section 101(a)(43) of the Act.  His possession of marijuana offense would not be considered an aggravated felony under Section 101(a)(43)(B) of the Act because it was a conviction for possession of a controlled substance.  Since respondent has no prior conviction relating to controlled substances, it would be a misdemeanor under federal law and therefore would not be an aggravated felony within the meaning of Section 101(a)(43)(B) of the Act.  Accordingly respondent has met all of the three statutory requirements to allow him to be considered for discretionary grant of cancellation of removal under Section 240A(a) of the Act.

With respect to the adverse discretionary factors of record, the Court concludes the respondent's conviction for possession of marijuana is an extremely serious adverse discretionary factor in the circumstances of this case.  Thus, the record shows that on October 16, 1999 respondent was transporting 141 pounds of marijuana in the truck that he was driving for his employment.  The record shows that on October 14, 1999 respondent had made arrangements with a person named Peter to take marijuana across the Immigration Service's checkpoint in Sarita, Texas.  Respondent testified that pursuant to this arrangement Peter put the respondent believed was 110 pounds of marijuana in the sleeper compartment of his tractor.  Respondent was to be paid $10,000 for the transportation and delivery of the marijuana.  Respondent was supposed to take the marijuana to the

A 90 453 823                          5                      March 7, 2000

mlw

rest stop on the highway four miles north of the Immigration

Service's Sarita, Texas checkpoint. Peter was going to meet

respondent there to pick up the marijuana. Respondent testified

that he thought that Peter was going to sell the marijuana. It

was respondent's testimony that Peter was going to give him half

of the $10,000 at the rest area when respondent delivered the

marijuana, and the respondent was going to obtain the other half

of the money from Peter at a later time. It was respondent's

testimony that when the marijuana was weighed by the officers it

was in fact 141 pounds of marijuana with a street value of

$112,800. Therefore, the record shows that respondent in fact

was engaging in trafficking in a very large quantity of marijuana

for an expected large financial gain. It is also a very recent

offense. Respondent was convicted on January 3, 2000 for this

possession of marijuana offense. He was sentenced to 10 years of

probation, 200 hours of community service, a $10,000 file, as

well as court costs and restitution. In light of this very

serious and recent conviction for trafficking in marijuana, the

Court finds that the record shows that respondent is a danger to

the community of the United States.

There are other adverse discretionary factors of

record. Thus, the record shows the respondent has been convicted

twice for driving while intoxicated. Respondent testified that

he was arrested and convicted for driving while intoxicated in

Harlingen, Texas in 1988. He was sentenced to six months

A 90 453 823                          6                    March 7, 2000

mlw

probation and a fine.  He completed the probationary period.
Respondent was again arrested and convicted for driving while
intoxicated in Harlingen, Texas in 1993.  He was sentenced to one
year of probation which he completed.

With respect to respondent's equities in the United
States, the record shows the respondent has lived in the United
States since 1980 at which time he was 13 years old.  Therefore,
he has had a long period of residence in the United States
beginning at a relatively young age.

Respondent also has strong family ties in the United
States.  He has three United States citizen children who are 11,
10, and 8 years old respectively.  They all attend school in the
United States.  Further, respondent's parents are both permanent
legal residents in the United States.  Respondent also has three
sisters, one of whom is a United States citizen, while the other
two are permanent legal residents of the United States.  With
respect to respondent's wife, the record shows that she has no
permanent immigration status in the United States.  She has a
work authorization card issued by the Immigration Service based
on upon the fact the respondent filed an immigrant visa petition
in order to immigrate her to the United States.  Based upon her
status in the United States, the Court finds that she is not
considered an equity in the United States with respect to this
proceeding.

The record also shows that respondent is purchasing a

A 90 453 823                        7                    March 7, 2000

mlw

home in the United States.  Respondent lives in that home with his wife and his children.  That is another equity in the United States.

The record also shows the respondent has been employed in the United States on a regular basis, first for many years with a construction company.  Most recently he has been a truck driver who has driven to different parts of the United States in his employment.  That is a favorable discretionary factor.  The respondent has been regularly employed in the United States.

Regarding the issue of rehabilitation, the Court finds that respondent has not shown that he has achieved any degree of rehabilitation.  As fully discussed above, the respondent's conviction for the marijuana offense is a very recent and serious crime.  Further, the respondent has two prior convictions.  As discussed above, he was convicted in 1988 for driving while intoxicated.  Respondent was placed on probation for a six month period which he completed.  However, respondent still committed the same offense again of driving while intoxicated in 1993.  That time he was given one year probation which he completed.  Accordingly the record shows that prior to his commission of the marijuana offense respondent had been placed on probation two times and went though the probationary periods.  However, that did not prevent respondent from committing a very serious offense on October 16, 1999.  In light of this record, respondent's testimony that he would not commit a crime again in the future is

A 90 453 823                 8              March 7, 2000

mlw

not at all persuasive.  The Court notes that the respondent's
failure to show any degree of rehabilitation is not an adverse
discretionary factor of record, rather the respondent has not
demonstrated the favorable discretionary factor of
rehabilitation.

With respect to the question of hardship to respondent
and his family if he is removed from the United States, the
record shows that respondent himself would sustain a hardship if
he is removed.  He has been in the United States for a long
period of time starting at a relatively young age.  It would take
certainly some adjustment for respondent to feel comfortable
living in Mexico.  However, there is no showing in the record
that respondent cannot make that adjustment.  With respect to
respondent's potential for employment in Mexico, as discussed
above he has worked in the United States in construction and is a
truck driver.  There is no showing that he could not obtain
similar employment in Mexico to support himself and his family.
Further the respondent testified that he would live in Matamoros,
Mexico if he were removed from the United States.  The Court
takes administrative notice that Matamoros is directly across the
United States border from Brownsville, Texas and is also
relatively close to the Harlingen, Texas/Rio Hondo, Texas area.
Therefore, respondent's parents, siblings, and other family
members could visit him frequently if he were to be removed.

The Court concludes that the hardship to respondent's

A 90 453 823                    9                    March 7, 2000

mlw

wife if respondent is removed is not a relevant hardship in this proceeding.  As discussed above, she has no permanent immigration status in the United States.  Any status that she had is based upon a petition that respondent has filed on her behalf.  If respondent is removed, there would be no basis for her to immigrate to the United States, and she would have no right to remain in this country under the law.

With respect to the hardship the respondent's children would suffer if he is removed from the United States, the Court concludes that they would suffer hardship.  Regarding the hardship to respondent's children, it is noted that respondent's wife testified that if respondent is removed from the United States she does not believe that she could get any permanent immigration status in the United States and that she would return to Mexico to live with respondent there.  She also testified that she would not leave her children in the United States with any relatives.  Therefore, the record demonstrates that if respondent is removed from the United States his wife and children would reside with him in Matamoros, Mexico.  Respondent's wife did testify that respondent's children have never lived in Mexico. She testified that they were born in the United States, that they have their school and family in this country.  The Court finds that respondent's children would suffer hardship if respondent is removed because it would mean that they would leave the United States to live with their parents in Mexico.  It would take some

A 90 453 823                    10                    March 7, 2000

mlw

adjustment for them since they have always lived in the United States.  However, the record shows that they would be living with their parents as a united family in Mexico.  They are also relatively young children who are 11, 10, and 8 years old.  There has been no showing that they could not adjust to living in Mexico with their parents and prosper in that country.  Further, respondent's parents, siblings, and other family members could visit respondent's children in Mexico, and respondent's children could also come to the United States to visit family members here.

The record also shows the respondent's parents and siblings would suffer hardship if respondent is removed to Mexico.  The record shows that they have a close family relationship, and they see each other frequently.  They would suffer hardship if respondent is not living as close to them as he lives at the present time.  However, the record also shows that they can visit respondent in Mexico on a regular, fairly frequent basis.

Based upon the entire record, the Court finds that the adverse discretionary factors of record outweigh on balance the sum total of respondent's equities in the United States, the favorable discretionary factor of his employment and the hardship to respondent and his family if he is removed from the United States.  Therefore the Court concludes the respondent's application for cancellation of removal should be denied in the

A 90 453 823                    11                    March 7, 2000